# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-70018

United States Court of Appeals
Fifth Circuit

**FILED**
May 11, 2020

Lyle W. Cayce
Clerk

JAMAAL HOWARD,

Petitioner–Appellant,

versus

LORIE DAVIS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, COSTA, and HO, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Jamaal Howard, a Texas death-row inmate, moves for a certificate of appealability ("COA") to contest the denial of his petition for a writ of habeas corpus. Because reasonable jurists would not dispute the issues, we deny the motion.

No. 19-70018

I.

After a jury deemed Howard competent to stand trial, another jury convicted him of capital murder.[1]  Based on the jury's answers to the special issues, the trial judge sentenced Howard to death.

Howard filed a state habeas application raising a bevy of claims, including the ineffective-assistance-of-counsel ("IAC") ones pressed in this motion. As relevant, Howard complained that his lawyer had failed to investigate and proffer evidence of his mental illness that would have (1) resulted in a life instead of death sentence; (2) persuaded the jury that he was incompetent to stand trial; and (3) shown that his *Miranda* waiver was neither knowing nor intelligent.  The trial court recommended denying relief.  The TCCA agreed. *See Ex parte Howard*, No. WR-77,906-01, 2012 WL 6200688, at *1 (Tex. Crim. App. Dec. 12, 2012) (per curiam) (unpublished).

Howard petitioned for federal habeas, raising the same claims.[2]  The district court declined to issue the writ, holding that, though Howard had exhausted the claims, he had failed to show that the state courts unreasonably applied federal law.  *See* 28 U.S.C. § 2254(d).  Now Howard seeks a COA.[3]

---

[1] In affirming the conviction, the Texas Court of Criminal Appeals ("TCCA") described the murder:

> [Howard] stole a gun from his grandfather the night before the murder and hid it.  Despite his family's efforts to persuade him to turn over the gun, [Howard] refused.  The following morning, [Howard] retrieved the gun and walked several blocks from his house to the Chevron store.  After peering in the windows, he entered the store, went into the secured office area where the victim was sitting, cocked the gun, and shot the victim in the chest.  [Howard] stole $114.00 from the cash register and reached over the dying victim to steal a carton of cigarettes before leaving.  The offense was recorded on videotape.

*Howard v. State*, 153 S.W.3d 382, 383–84 (Tex. Crim. App. 2004) (per curiam).

[2] The petition asserted other claims not before us.  Separately, Howard moved for an evidentiary hearing, which the district court denied.

[3] The district court denied one.

2

No. 19-70018

II.

Howard deserves a COA only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He

> satisfies that standard by demonstrating that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further.[4]

"A court of appeals should limit its examination at the COA stage to a threshold inquiry into the underlying merit of the claims, and ask only if the District Court's decision was debatable." *Buck v. Davis*, 137 S. Ct. 759, 774 (2017) (cleaned up). Because Howard sits on death row, we resolve doubts in favor of issuing a COA. *See, e.g.*, *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

To prove IAC, Howard must show that counsel's performance was objectively unreasonable and prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Courts strongly presume that the performance was good enough. *Rockwell v. Davis*, 853 F.3d 758, 761 (5th Cir. 2017).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Washington*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances," but we still "apply[] a heavy measure of deference." *Id.* A lawyer's work can be deficient where he fails, at the punishment phase, to look into and present mitigating evidence of the defendant's life history or mental illness.[5]

---

[4] *Raby v. Davis*, 907 F.3d 880, 883 (5th Cir. 2018) (cleaned up), *cert. denied*, 139 S. Ct. 2693 (2019).

[5] *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 395–96, 398 (2000); *see also Lockett v. Anderson*, 230 F.3d 695, 711 (5th Cir. 2000) ("It is clear that defense counsel's failure to

No. 19-70018

Because Howard exhausted the relevant claims, the district court's job was to determine whether the state adjudications were contrary to, or unreasonably applied, clearly established federal law as determined by the Supreme Court, or unreasonably determined the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). So, in this posture, we ask whether it's debatable that "there is any reasonable argument that counsel satisfied [*Washington*'s] deferential standard."[6]

## A.

Howard first seeks a COA for the issue of whether his lawyer failed to investigate, develop, and present mitigating evidence of Howard's life history and mental issues. "[T]he record is replete," he says, "with a picture of a bumbling attorney who was doing the bare minimum to get through a trial that could not end soon enough[.]" "Had counsel's performance not been deficient, there is a reasonable probability that Mr. Howard would have been sentenced to life instead of death."

More concretely, Howard urges that an effective attorney would have (1) hired an expert to examine Howard and gather a life history "for mitigation purposes";[7] (2) discovered records suggesting that Howard injured his head in 1997;[8] and (3) presented more witnesses and questioned them better.

---

investigate the basis of his client's mitigation defense can amount to [IAC].").

[6] *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason.").

[7] In an aside, Howard notes that the Eighth Amendment requires that the defendant be permitted to submit mitigating evidence in seeking to avoid death. *See, e.g.*, *Buchanan v. Angelone*, 522 U.S. 269, 276 (1998). True enough. But that jurisprudence establishes the state's obligation to permit Howard to submit such evidence—not his attorney's obligation to present it. *See id.*

[8] Howard points to other supposedly undiscovered evidence listed in his habeas petition, which he merely cross-references. But "a COA applicant waives claims by directing the appellate court to briefing before the district court to support his request for a COA." *McGowen v. Thaler*, 675 F.3d 482, 497 (5th Cir. 2012).

No. 19-70018

The district court rejected Howard's theories, opining that the state courts had reasonably adjudicated them.[9] The court noted that "Howard's trial counsel did investigate and provide witnesses and records as to Howard's childhood background, educational struggles, depression, and mental health issues." The lawyer had called many "lay witnesses, consisting of close family members, extended family, educators, coaches, neighbors, and friends to testify regarding his mental decline and odd behavior throughout the years." "[C]ounsel also [used] a trial investigator and obtained Howard's medical and school records."

Indeed, counsel started and finished the proceedings by highlighting Howard's mental issues. In his *first* remarks during guilt-phase opening arguments, the lawyer emphasized Howard's impairments. And in closing arguments at the punishment phase, the lawyer stressed that the jury should consider Howard's mental illness and give him life.

Howard's lawyer looped experts in, too, as the district court noted. Indeed, counsel hired a psychiatrist—Dr. Fred Fason—to conduct an examination. And *twice* counsel successfully moved the trial judge to appoint doctors to evaluate Howard's competency to stand trial.[10] Naturally, those

---

[9] Howard faults the district court for relying on state-court findings that "were prepared by the State for a different Judge eleven years after the trial and were signed off by the new Judge without a hearing." But Howard never told the district court that he had a problem with the state courts' method of factfinding, so his contention is forfeited. *See, e.g.*, *Thompson v. Davis*, 916 F.3d 444, 460 (5th Cir. 2019) (holding that a COA petitioner could not press an argument that was not presented to the district court); *Garcia v. Davis*, 704 F. App'x 316, 321 n.2 (5th Cir. 2017) (same); *see also Carty v. Thaler*, 583 F.3d 244, 266 (5th Cir. 2009) (holding that, because defendant did not present a specific mitigation-evidence argument to the district court, she couldn't assert it on appeal).

[10] To be sure, Duncan was appointed to evaluate Howard's competency for trial and not (specifically) to gather mitigation evidence. But much of what his evaluation revealed also counted as mitigation evidence of Howard's mental issues. *See, e.g.*, *Bell v. Cone*, 535 U.S. 685, 699–700 (2002) (observing that guilt-phase evidence relating to the defendant's failed insanity defense also served as mitigation evidence of mental illness at the punishment

examinations unearthed evidence about Howard's mental health. One of the evaluating psychologists—Dr. James Duncan—testified at the guilt phase[11] that Howard was impaired and possibly schizophrenic. And Dr. Fason testified at punishment about Howard's mental shortcomings, including that he may have been schizophrenic.

Howard's case is plainly distinguishable, the district court concluded, from those in which a lawyer totally fails to examine mental health and life history. *See Williams*, 529 U.S. at 395–97; *Lockett*, 230 F.3d at 714. Howard's lawyer pursued and presented many witnesses and experts who spoke about Howard's mental issues and history, so, the court opined, there is undeniably a reasonable argument that the lawyer satisfied *Washington*'s deferential standard.[12] To say otherwise only second-guesses the lawyer's performance as a matter of degree.

Howard's protests of inadequate research fail to show a debatable issue when they are stacked against the lawyer's investigative efforts and the bountiful testimony concerning Howard's mental health.[13] "[C]umulative testimony

---

phase).

[11] The same jury sat for punishment after hearing lots of evidence during the guilt phase about Howard's mental health and odd behaviors. As noted in *Cone*, *id.*, because the same jury sat and little time separated the phases, the evidence presented at the guilt phase was necessarily and properly considered at punishment, too. *See also, e.g.*, *Lockhart v. McCree*, 476 U.S. 162, 181 (1986) ("[I]n most, if not all, capital cases much of the evidence adduced at the guilt phase of the trial will also have a bearing on the penalty phase[.]"). Howard's lawyer repeatedly referred to that evidence in pleading for a life sentence.

[12] *See Richter*, 562 U.S. at 105 (requiring denial of habeas relief on an exhausted IAC claim if "there is any reasonable argument that counsel satisfied [*Washington*'s] deferential standard").

[13] Howard asserts in passing that the district court erred in refusing to apply the American Bar Association's professional-standards guidelines. But he does not explain what the guidelines require or why they would make it debatable whether his attorney's performance was deficient. His conclusional contention is therefore waived for inadequate briefing. *See, e.g.*, *Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002) (holding that a COA movant had waived an issue because it was briefed inadequately).

generally cannot be the basis of an [IAC] claim." *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). The suggestion that counsel should have gone even further—say, by finding evidence of a head injury[14] or by hiring yet another expert—does not show that the district court's conclusion was debatable.[15] Indeed, Howard's own state application admitted that his "trial lawyer did a fairly good job of presenting some type of mental deficiency."

## B.

Howard's remaining arguments either do not show a debatable issue or are forfeited.

## 1.

Howard asks leave to appeal the claim that his lawyer "failed to seek timely and relevant evaluations of the mental condition of Mr. Howard regarding his competence to stand trial." After two trials on the matter, a jury found Howard competent. The district court decided that the state courts had

---

Howard also claims that the district court erred in not applying Sixth Amendment caselaw that postdated his conviction. But, under professional standards from *any* era, reasonable jurists would not debate that the state courts reasonably applied federal law in holding that Howard had received effective assistance.

[14] *Cf. Johnson v. Cockrell*, 306 F.3d 249, 253 (5th Cir. 2002) ("[A]ny evidence about [the defendant's] alleged brain injury . . . is all 'double edged.' In other words, even if his recent claims about this evidence is true, it could all be read by the jury to support, rather than detract, from his future dangerousness.").

[15] *See, e.g., Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999) ("Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing."); *see also Washington*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]").

In addition, Howard only speculates that counsel would've obtained other evidence of mental illness, and jurists would not debate that that's not enough. *See Whitaker v. Quarterman*, 200 F. App'x 351, 355 (5th Cir. 2006) ("This court has often stated that a petitioner alleging [IAC] on the basis of a failure to investigate must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." (quotation marks removed)).

reasonably held that Howard's lawyer adequately pursued the competency issue.

Howard points to several alleged omissions:  His lawyer (1) "did not even consider competence until Dr. Fason urged him"; (2) failed to request an expert's review of competency until Fason suggested; (3) "did not discuss" Duncan's report with Duncan "until the day [the lawyer] began opening his case on guilt"; and (4) failed to request a trial on competency but, instead, waited for the state to do so.  Howard did not, however, press those omissions in his federal petition or contend that they proved ineffectiveness.  Instead, as the district court recognized, the petition was "silent regarding how the state habeas court [wa]s unreasonable pertaining to its findings of fact and conclusions of law" and failed to explain how the lawyer's efforts as to competency were lackluster.  We cannot grant a COA on an argument the district court had no chance to address.  *See Thompson*, 916 F.3d at 460.

Howard's other tack is to renew his general investigation-of-mental-health contentions.  Those were presented to the district court, but for reasons described, they do not raise a debatable issue or deserve to proceed.

2.

Howard demands a COA on whether his lawyer failed to scrutinize the knowingness and intelligence of his *Miranda* waiver and eventual confession.  Howard's theory is that, if his lawyer had adequately explored his mental health, then the lawyer would have successfully contended that Howard lacked the capacity to waive his *Miranda* rights and confess.

Howard does not suggest that he would have been acquitted were the confession excluded.  Instead, he complains that the prosecutors were able to use his Mirandized statement "to demonstrate that Mr. Howard was

calculating and had no remorse, something that was highlighted time and again . . . in seeking a death penalty."

Howard does not explain how a better investigation of his mental health could somehow have led to a successful challenge to his confession. He fails to engage with the district court's reasoning that the evidence showed that Howard understood his rights and was not coerced into waiving them and confessing. Indeed, he offers no theory as to why the court's conclusion was debatable. Regardless, for reasons described, reasonable jurists could not debate that the state courts reasonably applied federal law in determining that counsel's investigation was good enough.

### 3.

Howard directly appeals the denial of an evidentiary hearing. *See Norman v. Stephens*, 817 F.3d 226, 234 (5th Cir. 2016) (construing the same as a direct appeal). "Because [Howard's] constitutional claims fail, we need not address the merits of his evidentiary hearing claim." *Jackson v. Davis*, 795 F. App'x 939, 940 (5th Cir. 2020) (per curiam) (citing *Norman*, 817 F.3d at 234). But even if we do, *see Norman*, 817 F.3d at 234 (addressing the merits despite no need), there is no abuse of discretion, *see, e.g.*, *Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016).

\* \* \* \* \*

The motion for a COA is DENIED. The order denying an evidentiary hearing is AFFIRMED.