# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 13, 2023

Lyle W. Cayce
Clerk

No. 21-70010

Brittany Marlowe Holberg,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:15-CV-285

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.

Per Curiam:[*]

A Texas jury convicted Brittany Holberg of murder and sentenced her to death. After direct appeal and collateral review in state court, she petitioned a federal district court for a writ of habeas corpus, challenging the constitutionality of the verdict and sentence. The district court denied relief. Holberg now seeks a certificate of appealability (COA) to bring her habeas case before this court. We hold that reasonable jurists could debate the

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

district court's resolution of her ineffective assistance of counsel and *Brady* claims and GRANT a COA in part.

## I.

Holberg murdered A.B. Towery, Sr., in his apartment in 1996.[1] A Texas jury convicted her in 1998 and sentenced her to death, and the Texas Court of Criminal Appeals affirmed the conviction.[2] A Texas court denied Holberg's state habeas claim in 2014, and she subsequently filed a federal petition for habeas corpus in the Northern District of Texas. In August of 2021, the district court denied Holberg's petition and denied a COA.

Holberg seeks a COA from this court on five claims of error: (1) applying deference under the Antiterrorism and Effective Death Penalty Act (AEDPA) to state habeas court proceedings that "employed factfinding procedures not adequate for reaching correct results;" (2) denying discovery during federal habeas proceedings; (3) denial of due process resulting from prosecutorial misconduct related to coercion of false testimony, in violation of the Fourteenth Amendment; (4) denial of due process resulting from a *Brady* violation,[3] in violation of the Fourteenth Amendment; and (5) ineffective assistance of counsel, in violation of the Sixth Amendment.

## II.

To obtain a COA, Holberg must make a "substantial showing of the denial of a constitutional right."[4] She must demonstrate that "jurists of

---

[1] Various state and federal courts have recounted the facts of this case. *See Holberg v. State*, 38 S.W.3d 137, 139 (Tex. Crim. App. 2000); *Holberg v. Davis*, No. 2:15-CV-285-Z, 2021 WL 3603347, at *2 (N.D. Tex. Aug. 13, 2021).

[2] *Holberg v. State*, 38 S.W.3d at 139.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] 28 U.S.C. § 2253(c)(2).

reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." [5] Furthermore, "[w]here the petitioner faces the death penalty, 'any doubts as to whether a COA should issue must be resolved' in the petitioner's favor.'" [6] Although a petitioner seeking a COA must demonstrate "'something more than the absence of frivolity' or the existence of mere 'good faith,'" [7] our analysis of a COA application entails only a "limit[ed]," "threshold inquiry," [8] one made against the overarching backdrop of the deference due in federal habeas proceedings.

Federal courts must generally defer to state courts' factual determinations "unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [9] Federal habeas courts must also defer to state court determinations of law unless the state court decision "was contrary to, or involved an unreasonable application of" clearly established Supreme Court law. [10] AEDPA deference does not apply, however, where "the petitioner properly exhausted his claim by raising it in the state court, but the state court did not adjudicate that particular claim on the merits." [11]

---

[5] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

[6] *Allen v. Stephens*, 805 F.3d 617, 625 (5th Cir. 2015) (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir.2004)).

[7] *Miller–El*, 537 U.S. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

[8] *Id.* at 327

[9] 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[10] 28 U.S.C. § 2254(d)(1).

[11] *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

## III.

Holberg asserts that the district court erred by applying AEDPA deference to the state habeas court's findings. Despite AEDPA's requirement for federal courts to defer to state court findings of fact, Holberg maintains that the state habeas court's findings are based on an "incomplete record and deserve no deference under the AEDPA." But "a full and fair hearing is not a prerequisite to the operation of AEDPA's deferential scheme."[12] So even if the state habeas court limited Holberg's access to discovery, AEDPA demands that federal courts presume the correctness of a state court's factfinding.

This does not mean that Holberg was bereft of options for further factfinding. A federal court may allow a habeas petitioner to conduct further discovery for good cause.[13] Holberg asserts that the district court erred in denying discovery and an evidentiary hearing, that throughout state and federal habeas proceedings, she has had no opportunity to examine prosecutors' conduct—the core of her habeas claim.

We turn to the claims, mindful that while "a petition challenging an evidentiary ruling may only be entertained as corollary to a constitutional violation,"[14] and her challenge to the denial of discovery cannot provide independent grounds for granting a COA, it may be raised on appeal alongside her constitutional claims.

Even if this panel were to review the district court's denial of discovery as a free-standing claim, we could not find error. Holberg did not

---

[12] *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).

[13] *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997).

[14] *Norman v. Stephens*, 817 F.3d 226, 234 (5th Cir. 2016) (citing *Alix v. Quarterman*, 309 Fed. App'x. 875, 878 (5th Cir. 2009)).

submit a proper motion for discovery to the district court. In 2015, the district court struck her initial discovery motion for exceeding the page limit, and it denied her motion for leave to exceed the page limit.[15] Holberg failed to submit a revised motion for discovery. No reasonable jurist could debate the district court's denial of discovery where a habeas petitioner is afforded the opportunity to correct a layman's error but does not seize it.

## IV.

Holberg's remaining claims arise from two parts of her criminal trial. First, Holberg claims that testimony given by a key witness, Vicki Kirkpatrick, was false and coerced, amounting to prosecutorial misconduct and a *Brady* violation. She claims that suppression of Kirkpatrick's status as a paid police informant represents an additional *Brady* violation. Second, Holberg claims ineffective assistance of counsel at the punishment phase.

Kirkpatrick shared a prison cell with Holberg. She testified at trial that Holberg made gruesome statements extolling the murder with no remorse. Kirkpatrick recanted her testimony in a 2011 deposition taken during Holberg's state habeas proceedings, asserting that the state prosecutor scripted and coerced her testimony at Holberg's trial. She testified that Holberg was remorseful about the killing, that Holberg claimed she acted in self-defense, and that the prosecutor promised Kirkpatrick a lighter sentence in a contemporaneous burglary case in exchange for her testimony.

A *Brady* violation occurs when "the prosecutor fails to disclose certain evidence favorable to the accused" and that evidence is material to the outcome of the case such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

---

[15] Holberg moved to submit a 55-page motion for discovery, but the district court denied leave to exceed court's usual 25-page limit. *See* N.D. Texas Local Rule 7.2(c).

have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[16]

The state habeas court found Kirkpatrick's recantation to be incredible, determining that her testimony at trial was not false. The court based its conclusion in part on the consistency of Kirkpatrick's statements around the time of Holberg's trial. The district court, in turn, examined Kirkpatrick's statements, her subsequent burglary trial, inconsistencies in her 2011 statements, and additional affidavits Holberg submitted, finding that the state habeas court's determination was reasonable. After our review of the record, and given AEDPA deference to the state habeas court's findings of fact, we conclude reasonable jurists could not debate the district court's resolution regarding Kirkpatrick's recantation of testimony.

Holberg also raises the issue of Kirkpatrick's status as a paid informant for local police in unrelated matters, which she contends the state did not disclose to the defense. The state habeas court considered and rejected Holberg's *Brady* claim regarding Kirkpatrick's work as a police informant. The district court also expressed doubt that anyone outside the police department knew that Kirkpatrick was an informant; yet the court assumed, without deciding, that the prosecution suppressed the information. The district court concluded that even if the state suppressed Kirkpatrick's status as a paid informant, that information would not be material because it would not undermine confidence in the outcome of Holberg's trial. The district court reasoned that the facts before the state habeas court indicated

---

[16] *United States v. Bagley*, 473 U.S. 667, 680, 682 (1985). The government's alleged failure to disclose any deal between Kirkpatrick and the state would also contravene *Giglio v. United States*, 405 U.S. 150 (1972).

Kirkpatrick's work as an informant may have actually bolstered her credibility as a witness.

Reasonable jurists could debate the district court's resolution of Holberg's *Brady* claim. The Supreme Court has held that suppression of a witness's informant status satisfies all three *Brady* elements when the state pays the informant for participating in the case—although there is no evidence the state paid Kirkpatrick to participate in Holberg's case.[17] The district court's determination that Kirkpatrick's informant status may have acted as a double-edged sword for the defense conflicts with precedent that informers "raise serious questions of credibility"[18] and often receive decreased weight in the eyes of a jury.[19] Suppression of Kirkpatrick's informant status would have also hindered the defense's development of any related *Giglio* or *Massiah* claims,[20] precisely the claims Holberg has encountered difficulties exploring in habeas proceedings. Furthermore, because Kirkpatrick's testimony entered the jury's deliberations at both the guilt and punishment phases of trial,[21] the *Brady* claim applies to both Holberg's guilty verdict and her death sentence. These considerations demonstrate that reasonable jurists could debate whether suppression of

---

[17] *Banks v. Dretke*, 540 U.S. 668, 685, 703 (2004).

[18] *On Lee v. United States*, 343 U.S. 747, 757 (1952).

[19] *Banks*, 540 U.S. at 701–02 ("Jurors suspect [informants'] motives from the moment they hear about them in a case, and they frequently disregard their testimony altogether as highly untrustworthy and unreliable . . . .") (quoting Stephen Trott, *Words of Warning for Prosecutors Using Criminals as Witnesses*, 47 HASTINGS L.J. 1381, 1385 (1996)).

[20] *Massiah v. United States*, 377 U.S. 201, 206 (1964) (holding that a defendant's Sixth Amendment rights are violated when the government deploys an informant to interrogate the defendant following indictment); *Giglio v. United States*, 405 U.S. 150 (1972).

[21] *See also* Tex. Code Crim. Proc. Ann. art. 37.071(d)(1) (requiring the jury to "consider all evidence admitted at the guilt or innocence stage and the punishment stage").

Kirkpatrick's informant status would be sufficiently material to undermine confidence in Holberg's conviction for capital murder.

Holberg additionally claims that her trial counsel provided ineffective assistance during the punishment phase by failing to fully investigate and present mitigation issues, object to certain evidence, or properly prepare the defense's expert witness. In addition to overcoming AEDPA deference, under which the state's application of Supreme Court precedent must be "unreasonable,"[22] Holberg must show "(1) that [her] trial counsel rendered deficient performance, and (2) that the deficient performance resulted in actual prejudice."[23] She must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[24] However, "strategic choices must be respected in these circumstances if they are based on professional judgment."[25] This analysis includes layers of deference to both trial counsel and the state court, rendering it "doubly deferential."[26]

The state habeas court rejected Holberg's claims that trial counsel could have successfully objected to the specific pieces of evidence presented at the mitigation stage, relying on state law to find no legitimate basis for objection. The state habeas court also rejected Holberg's assertion that trial counsel failed to investigate adequately and present mitigating evidence. The district court found that none of these holdings contradicted clearly established federal law or represented an unreasonable determination of the

---

[22] *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

[23] *King v. Davis*, 883 F.3d 577, 586 (5th Cir. 2018).

[24] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[25] *Id.* at 681.

[26] *Cullen*, 563 U.S. at 190.

facts based on the evidence.[27] After review of the record, we conclude that reasonable jurists could not debate that Holberg's trial counsel's objections and preparation of the defense witness amounted to the "reasonably effective assistance" *Strickland* requires.[28]

A reasonable jurist could find defense counsel's preparation and presentation of mitigation evidence wanting, however, based on clearly established Supreme Court law. The state trial court submitted the two required questions to the jury at the sentencing stage of the death penalty case: (1) whether there is a probability that Holberg would commit criminal acts of violence that would constitute a continuing threat to society, and (2) whether any mitigating circumstances warranted a sentence of life imprisonment without parole rather than a death sentence.[29] Holberg's defense counsel relied entirely on the first question, hoping to persuade the jury that Holberg lacked the markers of future dangerousness. The defense abandoned the mitigation issue, stating during its opening argument that "we will not proceed to [q]uestion [number two]." After review of trial counsel's strategic decisions leading up to the mitigation stage, the district court determined that "Holberg's defense team undertook an extensive, objectively reasonable, investigation into Holberg's offense and background." Reasonable jurists could disagree about the district court's assessment that defense counsel made reasonable professional judgments in

---

[27] The district court reviewed *de novo* Holberg's claim that trial counsel's failed to object to expert testimony regarding future dangerousness. In a separate 2010 case, the Texas Court of Criminal Appeals rejected the methodology the expert used to form his opinions on Holberg's propensity for future dangerousness. The district court determined that Holberg's trial counsel cannot be faulted for failing to predict in 1998 that such an argument would be successful. No reasonable jurist could disagree with this holding.

[28] *Strickland*, 466 U.S. at 687.

[29] *See* Tex. Code Crim. Proc. Ann. art. 37.071.

its investigation and decision not to pursue half of Holberg's defense against the death penalty.

The Supreme Court has repeatedly emphasized the critical nature of mitigation evidence in death penalty cases, given that it tends to sway "the jury's appraisal of [the defendant's] moral culpability." [30] In many cases where the Supreme Court has held assistance ineffective, defense counsel presented at least some mitigation evidence to the jury, [31] in contrast to Holberg's case where defense counsel presented none. In addition, the evidence Holberg's counsel declined to place before the jury during sentencing is similar to that which the Supreme Court has deemed critical for the jury to hear in other death penalty cases, including repeated sexual abuse [32] and a deeply troubled childhood marked by caretakers' drug and alcohol addictions. [33] Furthermore, neither deference to trial counsel's strategic decisions, nor the purported double-edged nature of omitted evidence, precludes a finding that counsel provided ineffective assistance. [34] Reasonable jurists could debate the district court's conclusion in evaluating whether defense counsel's failure to present mitigation evidence—as permitted under Texas law and favored by Supreme Court jurisprudence—fell below federal standards for sufficient performance.

---

[30] *Williams v. Taylor*, 529 U.S. 362, 398 (2000); *see also Andrus v. Texas*, 140 S. Ct. 1875, 1882 (2020); *Porter v. McCollum*, 558 U.S. 30, 41 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390–93 (2005); *Wiggins v. Smith*, 539 U.S. 510, 535 (2003); *Canales v. Lumpkin*, 142 S. Ct. 2563 (2022) (Sotomayor, J., dissenting from denial of certiorari). *But see Burger v. Kemp*, 483 U.S. 776, 795 (1987).

[31] *See, e.g.*, *Williams*, 529 U.S. at 369; *Porter*, 558 U.S. at 32.

[32] *Wiggins*, 539 U.S. at 535.

[33] *Wiggins*, 539 U.S. at 535; *Porter*, 558 U.S. at 41.

[34] *Williams*, 529 at 396

The prosecution heavily emphasized this lack of mitigation in its closing argument in favor of the death penalty, asking "where is the mitigating evidence?" and asserting that Holberg "had everything handed to her on a silver platter" as a child. Defense counsel, perhaps realizing their mistake, attempted to re-characterize some evidence as mitigation in their own closing arguments, at which point the omission may have been too late to remedy. Reasonable jurists could debate the district court's conclusion regarding whether defense counsel's failure to proceed to the mitigation issue prejudiced Holberg, particularly in light of the jury's eleven hours of deliberation before returning her death sentence.

Holberg has made a substantial showing of the denial of her Sixth Amendment right to effective assistance of counsel during the punishment phase of her capital trial. She is entitled to a COA on that claim.

## V.

The motion for a certificate of appealability is GRANTED on Holberg's *Brady* claim related to Kirkpatrick's informant status and her claim of ineffective assistance of counsel during the punishment phase of her capital trial.

STUART KYLE DUNCAN, *Circuit Judge*, dissenting in part:

I respectfully dissent from the decision to grant a COA on Holberg's *Brady* and ineffective-assistance-of-counsel (IAC) claims.

The *Brady* claim necessarily fails because it would require extending Supreme Court precedent, which contravenes AEDPA. *See Langley v. Prince*, 926 F.3d 145, 159 (5th Cir. 2019) (en banc). All agree Kirkpatrick was a paid informant "in unrelated matters," but not in Holberg's case. *See* Op. at 7. Yet the Supreme Court has held only that the prosecution violates *Brady* by not revealing it paid a witness in the defendant's own case. *See Banks v. Dretke*, 540 U.S. 668, 699, 702–03 (2004). As to the distinct situation here, our court previously granted a COA on a similar *Brady* claim but then rejected it as outside *Banks*. *See Dennes v. Davis*, 797 F. App'x 835, 842 (5th Cir. 2020) (unpublished) ("*Banks* is distinguishable . . . because the arrangement between Balderas and Harris County existed prior to and wholly independent of the case against Dennes."). I would not replough this unfertile ground.[1]

The IAC claim fails because counsel's investigation into mitigating evidence was plainly sufficient. The question is not whether counsel's decision to forego presenting certain mitigating evidence was objectively unreasonable, *cf.* Op. at 9–11, but whether the "investigation" supporting that decision "*was itself reasonable.*" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citation omitted); *see also Clark v. Thaler*, 673 F.3d 410 427 (5th Cir. 2012) ("[P]resenting mitigating factors in a closing argument is not required."). As the district court explained, "Holberg's defense team undertook an extensive, objectively reasonable, investigation into Holberg's

---

[1] I leave aside other potential flaws in the *Brady* claim, such as whether it was procedurally defaulted.

offense and background," interviewing scores of witnesses, compiling nearly 200 pages of mitigation materials, and hiring a mental-health expert. The court also concluded, after minutely examining the record, that defense counsel "made objectively reasonable decisions regarding the scope of their investigation," as well as reasonable decisions to emphasize certain mitigating evidence over other evidence that was potentially harmful. As a result, I cannot find it debatable whether counsel's handling of mitigating evidence was objectively reasonable under *Strickland*, especially given the "doubly deferential" standard insulating the state habeas court's decision. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

I realize, of course, that whether to grant a COA involves a "threshold inquiry" and not an in-depth dissection of the merits. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Still, the COA calculus "requires . . . a general assessment of [the] merits," including AEDPA. *Ibid.* In light of that, I would not find that Holberg has made a substantial showing of a *Brady* or IAC violation and, accordingly, I would deny a COA on those claims.[2]

---

[2] I concur in denying COA on the other claims addressed in the majority opinion.