IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

F I L E D
February 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-70010

FRANKLIN DEWAYNE ALIX

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
For the Southern District of Texas
USDC 4:07-CV-39

Before KING,[*] DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[**]

Petitioner-Appellant, Franklin Dewayne Alix is a Texas death row inmate who seeks a certificate of appealability to appeal the district court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2254. For the reasons set forth below, we deny the request.

---

[*] Judge King concurs in the denial of the certificate of appealability only.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

In the early morning hours of January 3, 1998, Alix shot and killed Eric Bridgeford while in the course of committing aggravated sexual assault, robbery and burglary against his sister, Karyl Bridgeford. Alix admitted to robbing Karyl and forcing her into the trunk of his car but claimed that the sexual intercourse was consensual, the items taken were gifts, and the homicide was in self-defense. Alix also claimed to have been coerced into robbing Karyl by Kevin Smith, a man who allegedly threatened to kill Alix if he did not pay a drug debt.

Along with other evidence presented at trial, the prosecution introduced the testimony of Dr. Delbert Wayne Van Dusen, of the Harris County Medical Examiner's Office, who performed the autopsy of Eric. The parties debate the significance of certain circumstances surrounding an investigation of the Examiner's Office and Dr. Van Dusen's licensing.

During the sentencing phase of the trial, the State produced evidence of Alix's lengthy and violent criminal history. The State also introduced testimony from the widow of one of Alix's victims, Gregorio Ramirez, who identified Alix as the shooter in her husband's homicide. A piece of bloody gauze recovered from the scene of this crime was also admitted into evidence. Testing initially indicated that Alix's DNA was present on the gauze. This finding was later proved inconclusive and became the basis for the dismissal without prejudice of Alix's first federal habeas petition. Alix was convicted of capital murder on September 2, 1998 and sentenced to death.

On March 13, 2000, the Texas Court of Criminal Appeals ("CCA") affirmed Alix's conviction and sentence. Alix sought state habeas relief which was denied. Alix then filed a timely federal habeas petition along with a motion for discovery and abatement, raising claims that irregularities being independently investigated at the Houston Police Department crime lab may have implicated

DNA evidence used against him. The district court dismissed Alix's petition without prejudice to allow for an analysis of these claims in state court. Alix subsequently filed a second state habeas petition, and then a third petition, raising additional claims. The CCA denied the second application on the merits and the third petition as an abuse of writ.

Thereafter, Alix filed a second federal habeas petition. The district court denied this petition, declined to issue a certificate of appealability ("COA"), and granted summary judgment in favor of the State. Alix now appeals, seeking a COA under 28 U.S.C. § 2254. Alix argues that the district court erred by: 1) abusing its discretion in failing to conduct an evidentiary hearing; 2) failing to find that the state courts erroneously applied Napue v. Illinois; 3) failing to find that the state courts erroneously applied Brady v. Maryland; and 4) finding that Alix was not entitled to relief under Strickland v. Washington.

## II. STANDARD OF REVIEW

A petitioner must obtain a COA before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)(1)). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA petitioner "must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation omitted). As the Supreme Court has explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to

petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals sidesteps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.

Miller-El, 537 U.S. at 336–37.

Where an application for a writ of habeas corpus was adjudicated on the merits in state court proceedings, a COA is not issued unless the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

"Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination." ShisInday v. Quarterman, 511 F.3d 514, 520 (5th Cir. 2007). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

A.    Evidentiary Hearing

Alix claims that the district court should be reversed because it failed to grant him an evidentiary hearing before denying his petition on the merits. Relying on Hall v. Quarterman, 534 F.3d 365 (5th Cir. 2008), Alix argues that he did not have full access to the discovery process in his state habeas

proceedings and was therefore denied a full and fair hearing. He further asserts that the district court's determination that he was not entitled to an evidentiary hearing on his federal petition is reviewable under the abuse of discretion standard set forth in Hall.

As previously noted, a COA petitioner must make a substantial showing that he has been deprived of a constitutional right. Slack, 529 U.S. at 484. If no constitutional violation is asserted, the non-constitutional claims are only considered to the extent that they are connected to a claim on which a COA is granted. Lewis v. Quarterman, 272 F.App'x 347, 351 (5th Cir. 2008) (unpublished). Thus, a petition challenging an evidentiary ruling may only be entertained as corollary to a constitutional violation. Id.

Alix asserts no denial of a constitutional right in his evidentiary challenge. Therefore, no COA is issuable. To the extent that the district court's denial of an evidentiary hearing is salient to his remaining challenges, it will be considered in conjunction with those claims. Furthermore, Alix's reliance on Hall is misplaced as this court only reached the issue of whether the petitioner was entitled to an evidentiary hearing after granting a COA on the claim. Hall, 534 F.3d at 367.

B.    Prosecutorial Misconduct Under Napue

Alix claims that the prosecution introduced false DNA testimony linking him to the murder of Ramirez and violated his rights through the presentation of autopsy evidence from Dr. Van Dusen. Alix also contends that, during closing argument, the prosecution mischaracterized Dr. Van Dusen's testimony and improperly argued that Alix fabricated his claims of coercion by Smith. These acts, he asserts, constitute due process violations under the Fourteenth Amendment. Alix argues that the district court, as well as the state courts, misapplied Napue v. Illinois, 360 U.S. 264 (1959), in analyzing his claims of prosecutorial misconduct by placing the burden on him, rather than the

prosecution, to establish that he was prejudiced by the challenged conduct. He also asserts that the district court erred in finding that the prosecution committed no Napue violation. Further challenging the district court, Alix argues that it conflated the legal principles of Brady v. Maryland, 373 U.S. 83 (1963), with those set forth in Napue.

Alix's arguments fail; reasonable jurists would not debate the correctness of the district court's denial of relief. In Napue, the Supreme Court held that, where a witness provides false testimony, known to be so by the prosecution and the State does nothing to correct it, the defendant is denied due process. 360 U.S. at 269. In its Napue discussion, the district court laid out the well-settled rule that, to succeed in a due process violation claim, petitioner must show: "(1) [the witness] gave false testimony; (2) the falsity was material in that it would have affected the jury's verdict; and (3) the prosecution used the testimony knowing it was false." May v. Collins, 955 F.2d 299, 315 (5th Cir. 1992). Alix's assertion that the burden of proof rests with the prosecution to disprove his Napue allegations is contrary to clear precedent. There can therefore be no debate that the district court correctly placed the burden on Alix to prove that the State knowingly suborned perjury.

Furthermore, while the district court's opinion set forth the Brady and Napue standards jointly, it discussed each claim separately. This analysis was proper and not contrary to settled federal law.

In applying Napue and its progeny to Alix's claims of prosecutorial misconduct, the district court's determination that Alix failed to establish such a violation is neither contrary to nor an unreasonable application of federal law. The district court denied relief on Alix's claim that Dr. Van Dusen's testimony should have been excluded from trial because he was not licensed in Texas. Alix argues that the CCA applied the wrong state law in finding that a medical examiner may delegate duties to deputy examiners, such as Dr. Van Dusen, who

are not licensed. Even if we assume arguendo that the state court erred, there is no due process violation claim for evidence improperly admitted under state law. "We have stated many times that federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal quotations omitted).

With respect to the prosecution's closing arguments, the district court found Alix's claims without merit on two independent grounds: 1) any challenges to the prosecution's closing arguments were procedurally barred for failure to timely object, Wainwright v. Sykes, 433 U.S. 72, 86–87 (1977); and 2) Alix made no showing of prejudice stemming from these statements even if not waived. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000). The district court undertook the two-step analysis outlined in Wise: 1) whether the prosecution made an improper remark, and 2) whether the remark affected the substantive rights of the defendant. Id. The district court reasoned that the prosecution's statements regarding both Dr. Van Dusen's expert status as well as Alix's fabrication of Smith's existence were permissible under Texas law as summations of, and reasonable inferences from, the evidence. See Moody v. State, 827 S.W.2d 875, 894 (Tex.Crim.App. 1992). The district court's application of Wise and Moody is an appropriate application of federal law.

During the sentencing phase of Alix's trial, to show Alix's continued danger to society, along with other evidence linking Alix to the homicide of Ramirez, the State introduced DNA evidence and the testimony of a chemist. Both indicated that Alix's DNA was on the gauze recovered from the crime scene. The presence of Alix's DNA was later called into question. As the district court noted, Alix did not argue—much less carry the burden of showing—that the testimony regarding the DNA evidence was false, material, and knowingly used by the prosecution. May, 955 F.2d at 315. Alix simply re-asserts that it is the

State's burden to prove that he was not prejudiced by the evidence. The district court's denial of relief is not debatable among reasonable jurists.

Because Alix has failed to meet the requirements for an issuance of a COA on his Napue claim, there is no basis upon which to consider the district court's denial of an evidentiary hearing.

C. Prosecutorial Misconduct under Brady

Reasserting the facts alleged as grounds for error in his Napue claim, Alix argues that the district court should be reversed for failure to find a Brady violation. Based largely on the same analysis discussed above, the district court found that Alix's Brady claims also failed. We agree. The district court's conclusion is not debatable among reasonable jurists.

Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

The district court carefully reviewed the record and applied the appropriate legal analysis. The district court found that the prosecution did not withhold material exculpatory evidence and, even accepting Alix's assertion that the inconclusive DNA results were exculpatory, found that Alix failed to show materiality or a reasonable probability that the jury's determination would have been different. Furthermore, the district court determined that the DNA evidence linking Alix to the Ramirez murder was presented as part of a larger body of proof—including his long history of violence—that Alix posed a continued

threat to society. The district court's denial of Alix's Brady claim was not contrary to established precedent or an unreasonable application of Brady.

Having found no violation warranting a COA, there are no grounds upon which to revisit the district court's denial of an evidentiary hearing.

D.    Ineffective Assistance of Counsel

Alix argues that his trial counsel was ineffective, violating his constitutional rights under Strickland v. Washington, 466 U.S. 668 (1984). Alix broadly claims that trial counsel was lazy and did not adequately investigate his defense. To illustrate the claimed deficiencies, Alix asserts that trial counsel should have pursued Dr. Van Dusen's qualifications more vigorously and should have discovered an ongoing investigation by the District Attorney into the Harris County Medical Examiner's Office much earlier in preparing his defense. Furthermore, Alix contends that trial counsel should have insisted on the testimony of District Attorney, Johnny Holmes, regarding this investigation. Alix claims that accepting as adequate the statements of a deputy prosecutor, on behalf of the District Attorney's office, was deficient representation.

The district court's finding that Alix had shown no Strickland violation is not contrary to, or an unreasonable application of, federal law. Under Strickland, a reversal of a defendant's sentence is warranted only where a petitioner has met a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

In its extensive analysis of Alix's claim, the district court found that Alix failed to meet either prong of the Strickland test because counsel's performance was neither deficient nor prejudicial. The district court pointed out that trial counsel diligently prosecuted the case. Trial counsel was aware that Dr. Van Dusen did not have a Texas license and that the District Attorney was investigating the Harris County Medical Examiner's Office. Trial counsel cross-examined Dr. Van Dusen and raised the issue of the ongoing investigation. A motion to bar Dr. Van Dusen's testimony was set forth and denied. Trial counsel re-asserted the initial objections to Dr. Van Dusen's testimony throughout trial. After Dr. Van Dusen testified, counsel moved to strike his testimony, sought a mistrial, and also moved for a continuance. All motions were denied. Having found no deficient representation, the district court also found no prejudice. Given the highly deferential standard applied to review of counsel's performance and the district court's thorough review of the record, the district court's application of Strickland is a reasonable application of settled federal law.

As discussed above, when no COA is granted on a matter, the issuance of an evidentiary hearing on that issue is also foreclosed. In any event, Alix did not seek an evidentiary hearing on his Strickland claim from the district court and the matter is therefore waived. See Lewis, 272 F.App'x at 351–52.

## CONCLUSION

Alix has not made a substantial showing of the denial of a constitutional right on any of his claims and reasonable jurists would not debate the district court's conclusions that the state court appropriately applied federal law. Therefore, Alix's petition for COA is DENIED.