# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2020

Lyle W. Cayce
Clerk

No. 19-70002

JOE MICHAEL LUNA,

Petitioner-Appellant

v.

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:15-CV-451

Before DENNIS, GRAVES, and COSTA, Circuit Judges.[*]

GREGG COSTA, Circuit Judge:[**]

Joe Michael Luna admitted guilt at his capital murder trial. On the remaining question of punishment, Luna told the jury that he posed a continuing danger and wanted the death penalty. The jury followed his wish and sentenced Luna to death.

After Luna unsuccessfully sought relief in state court, he filed a federal habeas petition. The district court denied the petition, and we authorized an

---

[*] Judge Dennis concurs in the judgment only.

[**] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

appeal on only one issue: whether his trial counsel was constitutionally deficient in his investigation and presentation of mitigation evidence. Under the demanding standard to obtain federal habeas relief on claims a state court rejected, we affirm.

I.

We detailed the facts of this case at the certificate of appealability stage, *Luna v. Davis*, 793 F. App'x 229 (5th Cir. Oct. 24, 2019), so we provide only a summary here. Luna strangled Michael Andrade, a premed college student, to death while burgling Andrade's apartment. He pleaded guilty before the jury at the beginning of trial. The state trial court then held a one-phase trial after which it instructed the jury to find Luna guilty based on his plea and asked it to answer the special issues relevant to the death penalty.

The state presented evidence showing that Luna would continue to be dangerous. In addition to extensive testimony establishing his violent past, the state showed that Luna continued to plot serious crimes while in jail awaiting trial. He told his cellmate about a plan to escape using the trial judge as a "human shield." This was not just talk; Luna had obtained and hidden a handcuff key in a bar of soap.

At the conclusion of the state's case, Luna testified on his own behalf and against his attorney's advice. Luna told the jury he wanted the death penalty. Although he expressed remorse for his crimes, he testified that previous incarceration had not rehabilitated him and future incarceration would only "make [him] worse." He also said that he did not "blame none of [his] circumstances." On cross examination, Luna stated there was no mitigating evidence "whatsoever" that should keep the jury from sentencing him to death.

Following Luna's testimony, his attorney called two other witnesses. Margaret Drake, a social worker and mitigation specialist, had interviewed

Luna, his mother, his former stepmother, and two aunts. She testified that Luna had an unstable childhood, that he was probably physically abused, and that many of his family members had criminal histories and mental illnesses. The jury also received Drake's five-page report, which detailed Luna's childhood and highlighted that he may have been sexually abused.

A forensic psychiatrist, Brian Skop, assessed Luna's future dangerousness. Skop, who had interviewed Luna, testified that the defendant had a history of substance dependency, an impulsive personality, and antisocial personality disorder. Despite these challenges, Skop concluded that Luna would likely be at a lower risk for violence as time passed.

The defense then rested, and the jury answered the special issues in favor of the death penalty.

After exhausting his direct appeals, Luna sought habeas relief in state court. As relevant to our appeal, Luna argued that his childhood sexual abuse was immediately apparent from Drake's report. Luna's theory was that failing to further investigate the abuse and present it in the form of oral testimony was constitutionally deficient. He also provided an affidavit from Dr. Jack Ferrell, which stated that Luna suffered from mental illnesses Skop did not discuss, including schizophrenia, depression, and substance abuse. The state habeas court held both that Luna's counsel provided adequate assistance and that, if any failure occurred, it did not prejudice Luna.

Luna then sought habeas relief in federal district court on several grounds. The district court denied relief and a certificate of appealability. He next sought a certificate of appealability from us, which we granted only on whether "his trial counsel was constitutionally ineffective for failing to investigate and present additional mitigating evidence," particularly "(1) that his mother knew of and was willing to testify about sexual and physical abuse

he suffered as a child; and (2) that a thorough examination of his psychological state would have revealed that he suffers from a variety of mental health problems, including schizophrenia, depression, and PTSD." *Luna*, 793 F. App'x at 232.

## II.

Because the state courts adjudicated Luna's ineffective assistance claim on the merits, 28 U.S.C. § 2254(d) provides the governing standard. Under that provision, federal courts may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Luna argues that the state court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.

With the Antiterrorism and Effective Death Penalty Act framing our review, we turn to the question of whether the state court unreasonably rejected Luna's *Strickland* claim. There is a Sixth Amendment violation if counsel's performance was constitutionally deficient and that deficiency prejudiced the defendant. *Strickland*, 466 U.S. at 688, 694, 700. To be "deficient," trial counsel's performance must be objectively unreasonable. *Id.* at 687–88. Deficient performance prejudices the defendant if there is a reasonable probability that the outcome of the defendant's trial would have been different but for the deficient representation. *Id.* at 694. Because a unanimous jury verdict was necessary to sentence Luna to death, the prejudice inquiry reduces to whether there is a reasonable chance that a single juror would not have voted for the death penalty if counsel's performance had met constitutional standards. *Wiggins v. Smith*, 539 U.S. 510, 537–38 (2003).

4

We assume, without deciding, that Luna's counsel fell below the constitutional minimum in failing to investigate and present all mitigating evidence. *See, e.g.*, *Andrus v. Texas*, 140 S. Ct. 1875, 1881–82, 1885–87 (2020) (holding that counsel's failure to present mitigating evidence constituted deficient performance). The remaining question is whether the state court's prejudice determination—that there was no reasonable probability that additional evidence of Luna's sexual abuse and mental illness would have caused a juror to vote differently—was unreasonable.

It may be that a state court judge could have found prejudice in Luna's case. To determine whether a failure to present mitigation evidence prejudiced a defendant, courts "reweigh the evidence in aggravation against the totality of available mitigation evidence." *Wiggins*, 539 U.S. at 534.[1] Courts have found prejudice when counsel failed to present childhood abuse and mental health problems as mitigating evidence. *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 41, 43 (2009) ("It is unreasonable to discount to irrelevance the evidence of

---

[1] Luna argues that the district court's application of this standard was inappropriate because Texas does not require jurors to balance aggravating and mitigating evidence. Texas requires Luna's jury to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," considering "all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offence that militates for or mitigates against the imposition of the death penalty." TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(b)(1), (d)(1). If the jury answers that question "yes," as it did, Texas further requires them to determine "[w]hether, taking into consideration all of the evidence, including the circumstances of the offence, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed." *Id.* art. 37.071, § 2(e)(1). Both charges instruct juries to consider *all* evidence, mitigating or aggravating. Weighing all evidence is necessary to both questions, so our review—determining whether there is a reasonable probability a juror would have voted against the death penalty but for inadequate counsel—does as well. *See Andrus*, 140 S. Ct. at 1885–87 (recognizing in a Texas case that this prejudice inquiry requires a court to reweigh the mitigation evidence—what was presented at trial as well as what should have been—against the aggravating evidence (citing *Williams v. Taylor*, 529 U.S. 362, 397–98 (2000)).

[defendant's] abusive childhood . . . ."); *Rompilla v. Beard*, 545 U.S. 374, 391–92 (2005) (defendant suffered from schizophrenia, "extreme mental disturbance," and childhood physical abuse). And Luna points to significant mitigating evidence that could have been presented, including his mother's potential testimony that Luna was a victim of childhood sexual abuse, and that he suffered from schizophrenia and other mental illness. Luna also has direct evidence that concerns about his mental health were on the jury's mind: during deliberations the jury asked for the "psychiatric report of Dr. Skop," though the judge could not give it to them because that report had not been admitted.

But it is not enough for Luna to show that a judge looking at prejudice on a blank slate could rule in his favor. AEDPA requires Luna to show that a reasonable judge would have had to reach that result. *Harringon v. Richter*, 562 U.S. 86, 102 (2011) (explaining that AEDPA's relitigation bar allows federal courts to grant relief only when "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents"). That he cannot do.

Several factors allow a judge to reasonably distinguish this case from others in which there was prejudice from counsel's failure to present mitigating evidence of mental illness and childhood trauma. The most obvious one is Luna's own testimony. He told the jury he could not rehabilitate, that the death penalty was appropriate, and that no mitigating evidence existed to compel a contrary conclusion. The Supreme Court has found that trial counsel's failure to present mitigating evidence did not prejudice a defendant in analogous circumstances. *See Schriro v. Landrigan*, 550 U.S. 465, 475–80 (2007) (denying habeas relief when the defendant testified no mitigating evidence existed, instructed his attorney to present none, and told the sentencing court to "bring [the death penalty] right on").

That unusual feature of this case alone is likely enough to require us to defer to the state court's "no prejudice" determination. But there is more. Luna's asking the jury to give him the death penalty should not obscure the other strong aggravating evidence that existed. He committed a cold-blooded murder. He had an extensive and violent criminal history, including multiple home invasions. In some of those he pressed a gun against victims' heads. In one, he blindfolded family members and tied their wrists and feet with duct tape. In yet another, he wrapped residents up in bedsheets and left them underneath a Christmas tree. Then there is Luna's postarrest scheme for a jail break in which he would use the judge as a human shield if the escape did not go as planned.

On the mitigation side of the ledger, the evidence Luna argues his counsel should have presented was largely cumulative of what the jury did hear. Drake's testimony established that Luna suffered physical abuse, endured an unstable childhood, and had many family members with criminal histories and substance abuse disorders. Luna now argues that further investigation would have revealed further childhood physical and sexual abuse. But while the jury did not hear oral testimony about sexual abuse, it did have Drake's report, mentioning that Luna's uncle may have molested him as a child. Likewise, Skop testified that Luna had mental health issues, including difficulty moderating impulses, substance abuse, and antisocial personality disorder. To be sure, the evidence of schizophrenia and sociopathy that Luna says should have been presented is more serious than the conditions Skop described. But all of these conditions address whether Luna was fully in control of his actions. The additional evidence of mental health problems is different in degree, but not in kind. That further distinguishes this case from ones in which the Supreme Court has found unpresented mitigation evidence

to be prejudicial under the lens of AEDPA deference. *See, e.g.*, *Porter*, 558 U.S. at 41–43; *Rompilla*, 545 U.S. at 382.

To sum up, a state court may have been able to conclude that the failure to present mitigating evidence of sexual abuse and mental health conditions prejudiced the outcome of Luna's trial. But for the reasons we have explained, at best for Luna, prejudice was debatable under *de novo* state court review. That means the state court did not have to find prejudice. As a result, its "no prejudice" ruling was not unreasonable, and we lack authority to grant federal habeas relief.

## III.

Luna also appeals the district court's refusal to hold an evidentiary hearing. He does not need a certificate of appealability on this issue. *Norman v. Stephens*, 817 F.3d 226, 234 (5th Cir. 2016). But we will consider the issue only if it is "corollary to" the constitutional violation on which we authorized an appeal. *See id.* (quoting *Alix v. Quarterman*, 309 F. App'x 875, 878 (5th Cir. 2009) (per curiam)); *see also Alix*, 309 F. App'x at 878 ("[N]on-constitutional claims are only considered to the extent that they are connected to a claim on which a COA is granted."). Insofar as Luna appeals the district court's denial of a hearing to establish either the inadequate assistance of state habeas counsel, or the inadequacy of his trial counsel for grounds other than those we granted a certificate of appealability on, his appeal is not properly before us. *See id.*

As for his hearing request on the *Strickland* "mitigation evidence" claim on which we did allow an appeal, the district court did not abuse its discretion in denying a hearing. As we have held, the state court's determination that the lack of mitigation evidence did not prejudice Luna was not unreasonable even if we assume that his trial counsel was ineffective. Questioning his

counsel in court would not demonstrate that trial counsel prejudiced Luna. "[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Schriro*, 550 U.S. at 474 (quotation omitted).

\* \* \*

The judgment is AFFIRMED.